W. B. WILLS v. B. J. FISHER.

*Appeal—Pleading and Proof—Variance.*

1. Where, by consent of the parties, the Judge frames the issues at the close of the testimony and no exception is made on the trial to such issues or to the evidence or charge, objection cannot be raised on appeal that the issues submitted were not such as arose on the pleadings. Exception to the issues should be made on the trial so that the Judge may, if he thinks proper, revise and correct them.

2. Where the allegations upon which plaintiff's right to recover depended
were the payment by plaintiff, at defendant's request, of money
for mining stock, the acceptance of the stock by defendant and
his promise to repay to plaintiff the money so advanced, and such
allegations were denied by defendant; and it appeared that defend-
ant subscribed for the stock and plaintiff paid for and agreed to
take it if defendant should not be in a position to take it up him-
self; that the stock was issued in October and sent to defendant,
who returned it the following March, and plaintiff immediately
sent it back to defendant and has not seen it since; and defendant
testified that he received the stock when it was issued, that he
was called suddenly to England and carried the stock with him,
and while on the way met plaintiff and, replying to his request
for payment, said he would attend to the matter in New York or
London: *Held*, that there was no material variance between the
allegations and proof.

This ACTION was tried at the December Term, 1892, of
the Superior Court of GUILFORD County, before *Connor, J.,*
and a jury.

The plaintiff's complaint alleged—

1. That on or about the 30th day of April, 1891, in the
city of Greensboro, the defendant applied to plaintiff to pur-
chase for him fifteen shares of the stock of the Greensboro
Coal and Mining Company, a corporation organized under
the laws of North Carolina, with its principal office in said
city; and at the same time requested the plaintff to advance
the money necessary for the purchase of said stock, to-wit,
the sum of five hundred dollars, and in consideration
thereof the defendant promised and agreed with the plain-
tiff that when said stock should be issued by the said com-
pany to the defendant and received by him he would repay
the plaintiff the said sum advanced by him as aforesaid.

2. That in accordance with this request and agreement
the plaintiff shortly thereafter purchased for defendant the
said fifteen shares of the stock of the said Greensboro Coal
and Mining Company, paying therefor the sum of five hun-
dred dollars, the last payment being made on the 29th day

of June, 1891, and the said shares were duly issued to the defendant and the certificates thereof forwarded to and received and accepted by defendant in the month of September or October following, and the said shares appear on the book of said company in the name of the defendant, and the certificates of stock are still in his possession.

3. That notwithstanding the defendant has so received and accepted the said shares of stock in accordance with the promise and agreement aforesaid, he has failed and refused to pay the plaintiff the said sum of five hundred dollars or any part thereof, although the plaintiff has often demanded the same of the defendant, etc.; that the same is due and owing to plaintiff, with interest from the first day of July, 1891. Wherefore plaintiff demands judgment, etc., for five hundred dollars, with interest from July 1st, 1891, and for costs, etc.

The defendant's answer alleged—

1. That the allegations in paragraph 1 of plaintiff's complaint are not true.

2. It is not true that plaintiff, in accordance with request of defendant, purchased for defendant shares of stock as alleged in paragraph 2 of complaint, though it may be that plaintiff caused said shares to be entered on the company's books in the name of defendant. Defendant never accepted said certificate of stock, nor is said certificate in possession of defendant.

3. It is true that defendant has refused to pay the sum of five hundred dollars demanded by plaintiff on this alleged consideration of money paid by him for defendant, etc.; but defendant denies that he owes plaintiff anything on account thereof.

4. The transaction between the parties was this: The plaintiff had or claimed some interest in some lands in Stokes county which were supposed to contain veins or

deposits of coal, and as a matter of speculation the plaintiff wished to form an incorporated company and to sell shares of stock in the same—in other words, he was the promoter of the scheme and venture—and as defendant is informed he did procure letters of incorporation from the Clerk of Guilford County. Plaintiff approached defendant on the subject of his enterprise and begged defendant to permit him to use his name as one of the stockholders. Defendant told plaintiff that he did not desire stock in said company and that, in fact, being interested and engaged in purchasing large real estate in the city of Greensboro and improving the same by building thereon, it could not be convenient for defendant to direct his funds as requested by plaintiff; whereupon plaintiff agreed that he would subscribe for stock in defendant's name, and if it was inconvenient for defendant to pay for the same he need not do so, and that plaintiff would take the stock himself. Defendant was afterwards informed that plaintiff had caused defendant's name to be published as one of the directors of said company, and being unwilling that he should be held out to the public as an officer of a corporation of which he was truly not a member, he caused his name to be stricken out as director.

Defendant has never supposed that plaintiff has paid anything for said stock, being the promoter of the scheme, though defendant has given plaintiff papers purporting to be acknowledgments of money paid for him on this behalf, the matter being perfectly well understood, as he supposed, between them; that defendant neither had nor claimed any interest in said shares, but did what he did do to aid plaintiff, and that he was not to pay anything in fact, and the shares were to belong to plaintiff.

5. To defendant's surprise certificate of stock in said corporation was forwarded to defendant, and he returned the

same and refused to receive it. Defendant prays that plaintiff take nothing, etc.

Plaintiff testified as follows: "There is a corporation known as the Greensboro Coal and Mining Company, in which I was a director. The property which it owned was purchased from me. Defendant subscribed for fifteen shares ($500 worth) of stock, and I paid for it. The agreement was made in the office of the company, in the presence of G. E. Brodrick, the secretary and treasurer of the company. In the event Fisher did not take the stock I was to take it. I advanced the money and paid for the stock, which was issued in Fisher's name, and I sent it to him. I paid the money to Mr. Brodrick, the secretary and treasurer of the company, and the defendant gave me, in his own handwriting, these receipts for it:

"The following are copies of the receipts:

"'Received a receipt for ($100) one hundred dollars subscribed by Mr. Wills on my behalf, being twenty per cent. assessment on my shares in the Greensboro Coal and Mining Company.          B. J. FISHER.
"'May 2, 1891.'

"'June 1st, 1891.
"'Received from Mr. W. B. Wills receipt showing payment by him, for me, of ($200) two hundred dollars, being the second and third installments of twenty per cent. each upon my subscription for fifteen shares to the Greensboro Coal and Mining Company. ·          B. J. FISHER.'

"I completed the payments on the 29th of June, 1891, taking no receipt for the last payment of $200, the certificate of stock being issued instead. I saw the defendant in July after I finished paying for the stock and asked him

to come in my office and settle up for the stock, and he agreed to do so, but never did so. I saw him after he had received the stock, several times. I saw him in Greensboro in October and again spoke to him about the stock. He told me he was going to England. I asked him for a check for the $500. He said the stock was in his bag or grip-sack, and he would send check for it from New York. He never sent check nor returned the stock, neither from New York or from England. I wrote him again about it while he was in London. He returned in February, 1892, and I made another demand upon him in Greensboro. He said he would see me about it. In March following he returned the stock to me without any transfer on the books of the company or on the back of the certificates themselves. The same day I sent it back to him by registered letter and have never seen it since. I had sold the controlling interest in the company at that time."

*Cross-examined.*—"I never received any receipt for the stock after I sent it back to Fisher. I was not a promoter of the Greensboro Coal and Mining Company. They issued me $30,000 worth of paid up stock as part consideration for the property which they purchased from me. The capital stock was $100,000. Besides myself there were nine other stockholders. I paid for the fifteen shares of defendant's, and the other eight stockholders paid for their own stock, fifteen shares each. It was agreed that if Mr. Fisher did not take the stock I was to take it back. I returned the stock to Fisher the same day I received it. He knew that the stock was issued to him; he was in the office several times after the stock had been issued to him. The stock was sent to Fisher October 1, 1891. He received the certificates and did not return them until March 22, 1892. I returned them to him the same day, and have never seen them since."

The defendant B. J. Fisher, in his own behalf, testified as follows:

"At the first of last year the plaintiff met me on the street and said that he had a property that he was going to float; that he had put me down for $500. I told him that I did not wish to invest. He said it made no difference; that he would take it in my name, and if I did not want it he would pay for it and take the stock. When the payments were due he paid. I was not in a position to take it. I consented to let him put my name as a director, and he sent me receipts for amounts paid in. Mr. Brodrick came to me and said that as I was a director I must pay the stock. I told him that I would resign as a director, and to tell plaintiff that our agreement was at an end. The agreement was in writing, and is as follows:

"'I hereby agree to take the stock now standing in the name of B. J. Fisher in the Walnut Cove coal property, known as the Marshall property, and subscribe for the same in the event of said Fisher not being in a position to take up stock himself.

'(Signed)      W. B. WILLS.

"'April 23, 1891.'

"I received the stock and laid it on my table October 1, 1891. On the 3d of October I received a telegram that my wife was very ill in England. I hurriedly put the stock in my bag and carried it to England. While in Greensboro, on my way to England, I saw the plaintiff and he asked me for the money. I told him that I would attend to the matter in New York or London. This was as I was about getting off. When I came back I returned the stock to Mr. Wills, and have not seen it since. A registered letter came for me, but I refused to take it out. I have not been

'in a position' to take the stock since April 23, 1891. There has been no day between that day and this that I could pay five hundred dollars toward anything, taking into consideration my position towards the thing in question—I mean to say that I have never been in a position to pay five hundred dollars for a thing worth nothing. I did not have the money to pay for the stock.

"I also signed the paper agreeing to subscribe to the amount opposite my name. The number of shares was fifteen. Amount to be paid, $500. I signed the paper, which was as follows:

"'GREENSBORO, N. C., April 20, 1891.

"'We, the undersigned, agree to subscribe the amounts opposite our names to the stock of the company to be organized for the purpose of purchasing the mineral rights of one hundred and fifty acres of land near Walnut Cove, Stokes county, N. C., and for the development of the coal and other minerals therein. The capital stock of this company is to be 1,000 shares at $100 ($100,000), $30,000 of which is fully paid up and to go towards the said purchase. Not more than 300 shares ($30,000) at the start are now to be sold at $33.33⅓ per share, and 400 shares ($40,000) are to be held in the treasury, to be sold hereafter at the discretion of the board of directors.

"'The company is to be organized when not less than $5,000 or more than $10,000 is hereto subscribed.

"'The payments on the stock hereto subscribed shall be as follows: Twenty per cent. on organization of company and twenty per cent. each on 1st day of June, July, August and September, 1891.

"'The cost of the property is $6,550 cash and $30,000 in stock. T. C. Worth, fifteen shares, $500; E. P. Wharton, fifteen shares, $500; G. E. Brodrick, fifteen shares, $500;

B. F. Dixon, fifteen shares, $500; W. B. Wills, fifteen shares, $500; H. B. Tilden, fifteen shares, $500; Hal. M. Worth, fifteen shares, $500; B. J. Fisher, fifteen shares, $500; O. W. Carr, fifteen shares, $500; A. W. E. Capel, fifteen shares, $500.'"

The defendant introduced no further testimony.

In behalf of the plaintiff George E. Brodrick testified as follows: "I am secretary and treasurer of the Greensboro Coal and Mining Company. The company bought the property from W. B. Wills, the plaintiff. The defendant was a stockholder and director. I was present at a conversation between plaintiff and the defendant in the office of the company. The defendant made some objection to taking the stock and they had quite a long conversation. The paper-writing was then drawn by defendant (as copied above) and signed by plaintiff. The plaintiff paid the money ($500) for the shares, and the certificates were issued in the name of defendant and have never been assigned or transferred to any one else on the books of the company. Captain Fisher examined the property of the company and expressed himself as pleased with it. I saw the plaintiff a few minutes after he had seen the defendant in October, 1891, when defendant was on his way to England, and plaintiff told me that he had just seen defendant and asked him for the $500, and that defendant had told him that he had the stock in his bag, and that plaintiff would hear from him in New York. I was present when defendant wrote his resignation as director. It was done in my office. He did not say that he would have nothing more to do with the company, nor did he say anything about the agreement being at an end."

R. M. Reese testified in behalf of plaintiff as follows: "I am City Tax-collector for Greensboro. I know the taxable

value of the defendant's property in Greensboro.   For 1892 he paid tax on $61,500 of property, and the same amount in 1891.   I do not know anything of his affairs ; nor whether he has paid for the property ; nor what position he is in."

The testimony having been closed, the defendant insisted that the proof did not sustain the allegations of the complaint, and that he was entitled to judgment.   The Court ruled otherwise, and submitted the following issues to the jury :

(The defendant did not request the Court to note any exceptions).

1. Did the defendant promise to repay the plaintiff the money advanced by him to pay for the stock in the coal company whenever he, the defendant, accepted the said stock ?

2. Did plaintiff advance the sum of five hundred dollars to pay for said stock ?

3. Did defendant accept said shares of stock ?

4. Is the defendant indebted to the plaintiff in the sum of five hundred dollars as alleged ?

The jury, in the verdict, responded to all the issues in the affirmative.

On this verdict plaintiff moved for judgment, and defendant moved for a new trial on the ground, which he then suggested, that the issues submitted were not such as arose on the pleadings, and that there was a variance between the allegations and the proof.   Defendant's motion overruled.   Judgment for plaintiff.   Defendant excepted and appealed.

*Mr. James E. Boyd*, for plaintiff.
*Mr. J. T. Morehead*, for defendant.

MacRae, J., after stating the facts: It will be seen that the plaintiff alleges a purchase of certain stock by him for defendant, and at his request; the payment by plaintiff of $500 for said stock at the request of defendant, the issue of the same to defendant and its acceptance by defendant, and his promise to pay plaintiff the sum advanced by him upon the issue of said stock to defendant, and the refusal to pay plaintiff the sum so advanced.

The defendant, in his answer, denies the purchase of the stock for him by plaintiff, or the request by defendant, as alleged. He sets up a different and conditional contract, and he denies his liability upon the same.

The plaintiff tendered the one issue: Is the defendant indebted to the plaintiff, and if so, in what amount? To this issue defendant objected, and it was agreed that the Judge should frame the issues at the close of the testimony. The Judge did frame the issues at the close of the testimony, the defendant offering no objection. There was no exception to the evidence or to the charge.

On defendant's motion for a new trial he assigned as error that the issues submitted were not such as arose upon the pleadings.

It has been often held that exceptions to the issues must be taken on the trial in order that the presiding Judge may have the opportunity to revise and correct them, if he shall deem proper to do so. The reason of this rule is so obvious and has been so frequently stated that we refer only to *Moore* v. *Hill*, 85 N. C., 218, and the many cases cited in Clark's Code, sec. 395.

The testimony having been closed, the defendant insisted that the proof did not sustain the allegations of the complaint, and that he was entitled to judgment; in other words, that there was a fatal variance between the allegations and the proof. It is true, as defendant contends, that

a plaintiff will not be allowed to abandon averments in his complaint and recover upon facts alleged in the answer, but must show that he is entitled upon the ground on which he has placed his claim. But these averments must be material and must constitute an essential element in his right to recover.

Upon inspection of the record, as we are required to do by section 957 of *The Code,* which, as construed in *Thornton* v. *Brady,* 100 N. C., 38, "refers only to such constituent matters of the action as must necessarily go upon and constitute the record of it, and which the Court sees and must take notice of, such as pleadings, the verdict and the judgment," we find that the allegations upon which plaintiff's right depended were the payment of money for stock by plaintiff at defendant's request, the acceptance of the stock by defendant and the promise by him to repay to plaintiff the money advanced by him. These allegations were denied by defendant, or so qualified in the averments of the answer as to amount to a denial. Whether the stock was purchased by plaintiff, or subscribed for by defendant and paid for by plaintiff at defendant's request, were questions which would not affect the liability of defendant in this action. The nature of the cause of action, which, in either case, was for money paid to the use of defendant, was in no way changed by the evidence or the issues.

The issues met the altercations of the parties; they were framed by consent and without objection or exception. "A variance arises where the proofs do not sustain the cause of action alleged in the complaint. If it is immaterial it will be disregarded; if material and misleading, the Court may, in its discretion, allow an amendment on just terms; but where the evidence relates to a cause of action entirely different from that stated in the complaint it is not a case of variance at all, and it was never intended by *The Code*

to allow a plaintiff to prove a cause of action which he has not alleged." *Abernathy* v. *Seagle*, 98 N. C., 553; Clark's Code, sec. 269.

We hold that in this case there was no material variance between the allegation and the proof. The issues were fairly framed after all the evidence was in. It is to be presumed that his Honor's instructions to the jury presented the contentions fully, with the law bearing upon the same. There is                                                No Error.